UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELA MARIE KLOCK,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1]<br><br>Defendant. | NO: 12-CV-0182-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 13 and 18). Plaintiff is represented by Christopher Dellert.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant. No further action need be taken by reason of the last sentence of 42 U.S.C. § 405(g).

Defendant is represented by Jeffrey R. McClain. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. There being no reason to delay a decision, the hearing set for February 2, 2014, is vacated and this matter is submitted without oral argument. For the reasons discussed below, the Court will grant Plaintiff's motion, deny Defendant's motion, and remand the case to the Commissioner for an award of benefits.

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §

404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed an application for Title II disability insurance benefits on July 24, 2009, alleging a disability onset date of March 20, 2006. Tr. 172-75. This application was denied initially and upon reconsideration. Tr. 103-05, 107-08. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 17, 2011. Tr. 21. The ALJ issued a decision denying Plaintiff benefits on March 11, 2011. Tr. 21-34.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 20, 2006, the alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff had severe impairments consisting of uterine fibroid, depressive disorder, anxiety disorder and obesity. Tr. 23. At step three, the ALJ

found that these severe impairments did not meet or medically equal a listed impairment. Tr. 24-25. The ALJ determined Plaintiff had the residual functional capacity (RFC) to:

> Perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally bend, stoop, crouch, crawl and ascend/descend stairs. The claimant is not able to climb ladders, ropes or scaffolds. The claimant should avoid concentrated exposure to hazards. The claimant is able to understand, remember and carry out simple, routine repetitive instructions and well learned complex tasks. The claimant is limited to only superficial (non-collaborative) contact with the public and co-workers. The claimant would have episodic lapses in attention and concentration, but not to such a degree as to prevent average level production.

Tr. 25-26. At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a computer typesetter/desktop publisher. Tr. 33.

The Appeals Council denied Plaintiff's request for review on February 1, 2012, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-3; 20 C.F.R. § 404.981.

## ISSUES

Plaintiff raises two issues for review:

1. Whether the ALJ erred in discrediting Plaintiff's testimony about the symptoms caused by her uterine fibroid; and
2. Whether the ALJ erred in discrediting the lay witness testimony of Plaintiff's husband.

DISCUSSION

**A. Plaintiff's Credibility**

A social security claimant is entitled to testify about the severity of the symptoms caused by his or her alleged impairment. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). When presented with such testimony, an ALJ must first determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the type of symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The medical evidence need not corroborate the alleged *severity* of the symptoms, but rather that the claimant's impairment "could reasonably have caused *some degree* of the [pain or] symptom." *Id.* at 1036 (emphasis added) (quotation and citation omitted). If the claimant produces such evidence, and if there is no evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

If the ALJ finds the claimant's testimony unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making a credibility determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for

truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* The absence of corroborating medical evidence is also "a relevant factor" in assessing the claimant's credibility, though the ALJ may not discredit a claimant's testimony on that basis alone. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Further, the ALJ may consider a claimant's "inadequately explained failure to seek treatment or to follow a prescribed course of treatment" as a factor relevant to credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In the absence of evidence of malingering, the ALJ's reasons for making an adverse credibility determination must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ provided the following reasons for discrediting Plaintiff's testimony about the severity of her menstrual-related symptoms:

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended

> by any treating doctor. Further, although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature.
>
> Additionally, the record reveals that the claimant failed to follow-up on recommendations made by her treating doctors. Despite numerous recommendations over a 10-year period by various doctors advising the claimant to undergo a hysterectomy, the claimant has chosen to continue with conservative treatment. This unreasonable decision suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal and undermine the credibility of claimant's allegations as to the severity of her symptoms. Although claimant and her husband have testified the claimant did not have the surgery because she did not have insurance, this appears to be inconsistent with the record. The records reveal a hysterectomy was recommended at least as early as 2003 and the claimant's insurance did not cease until August 2005.

Tr. 32.

The reasoning above is not supported by substantial evidence in the record. As Plaintiff correctly notes, the crux of the ALJ's adverse credibility finding is that Plaintiff made an "unreasonable decision" to forego a hysterectomy that would have eliminated her symptoms. This finding is deficient in two key respects. First, Plaintiff's medical records do not support the ALJ's finding that Plaintiff's *initial* decision to forego a hysterectomy was unreasonable. When Plaintiff first began seeking treatment for fibroids in 2003, her treating physician, Dr. Koopersmith, identified three potential treatment options: a myomectomy[2], a hysterectomy, and a

[2] A myomectomy is the surgical removal of a fibroid from the uterus.

urinary artery embolization.[3]  Tr. 338, 336, 335, 334, 332.  According to Plaintiff, Dr. Koopersmith recommended a urinary artery embolization to shrink the tumor followed by a myomectomy or a hysterectomy.  Tr. 77.  Plaintiff testified that she was uncomfortable with this approach because a urinary artery embolization "was not a routine procedure" at the time.  Tr. 77.  As a result of this apprehension, Dr. Koopersmith suggested a more conservative approach in the form of Lupron injections.  Tr. 77.  Plaintiff accepted this recommendation and received Lupron injections throughout 2004.  Tr. 327, 330, 349.  This course of treatment was effective in reducing Plaintiff's symptoms until early 2005.  Thus, the medical evidence simply does not support the ALJ's finding that Dr. Koopersmith "repeatedly recommended" a hysterectomy and that Plaintiff "repeatedly refused."  Rather, the evidence reflects that Plaintiff made an informed decision to pursue a more conservative course of treatment which was endorsed by her physician.

Second, the record does not support the ALJ's finding that Plaintiff's subsequent decisions to forego a hysterectomy were unreasonable.  As the ALJ correctly noted, conservative treatment of Plaintiff's uterine fibroid was not definitively ruled out until she was seen by Dr. Frenen in April 2006.  By that time,

---

[3] A urinary artery embolization is a procedure to block blood flow to the uterus with small particles delivered through a catheter.

however, Plaintiff had lost her health insurance and was unable to afford paying for the surgery out-of-pocket. Tr. 77-78. Plaintiff attempted to negotiate a payment plan with the hospital, but was unable to make the mandatory up-front payment of approximately $7,500. Tr. 77-78. Plaintiff further testified that she applied for a variety of health insurance plans in an attempt to be able to afford the surgery, but that her applications were all rejected due to pre-existing conditions. Tr. 76, 77.

Despite questioning Plaintiff at length about losing her health insurance, the ALJ did not specifically address this circumstance in her opinion. Notably, the ALJ did not find or otherwise suggest that Plaintiff's testimony about her inability to afford a hysterectomy without health insurance was not credible. Nor did the ALJ intimate that Plaintiff could or should have been more diligent about pursuing alternative means of financing the procedure. Instead, the ALJ accepted Plaintiff's testimony that she could not afford the procedure without insurance and simply noted that Plaintiff could have had it while she was insured from 2003 to 2005. Tr. 32. As discussed above, however, the medical evidence cannot support an adverse credibility finding based upon Plaintiff's failure to have the procedure during *that* time period.

It is well-established that an ALJ may not discredit a claimant's testimony on the ground that the claimant failed to pursue treatment which he or she could

not afford. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("Although we have held that an unexplained, or inadequately explained, failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony, we have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it.") (internal citations, quotation, and alterations omitted); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Orn's failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding."). That is, in effect, what occurred here. In essence, the ALJ rejected Plaintiff's testimony about the severity of her symptoms based upon Plaintiff's failure to have a hysterectomy when she could have afforded it. *See* Tr. 32 ("This unreasonable decision [to forego a hysterectomy] suggests that [Plaintiff's] symptoms may not have been as serious as has been alleged in connection with this application and appeal and undermine the credibility of claimant's allegations as to the severity of her symptoms."). Had Plaintiff been advised that a hysterectomy was her only viable option *at a time when she still had insurance*, this reasoning would be sound. Given that her treating physician expressly endorsed a more conservative course of treatment

during the relevant time frame, however, the ALJ's reaches a conclusion not supported by the evidence. In hindsight, Plaintiff might have been better served by having a hysterectomy in 2003, 2004 or 2005. Nevertheless, it is undisputed on this record that Plaintiff lost her health insurance in 2005 and could not afford the procedure when it became clear in 2006 that it was necessary. The ALJ erred in discrediting Plaintiff's testimony on this basis.

**B. Lay Witness Testimony**

Plaintiff argues that the ALJ erred in discrediting the testimony of her husband, Mark Klock, concerning the extent and severity of her symptoms. ECF No. 14 at 14-17. The Court agrees. In rejecting Plaintiff's husband's testimony, the ALJ explained:

> The undersigned afforded little weight to the husband's recitation of the severity of the claimant's symptoms to the extent that his testimony is inconsistent with the residual functional capacity and this decision due to his bias or benevolent interest in the determination of this case; as he is married to the claimant, his testimony is generally inconsistent with the objective evidence in the record and his testimony may have an indicia of unreliability because his report is based upon the claimant's self-reported symptoms and not based upon medical facts or diagnostic testing.

Tr. 33.

As Plaintiff correctly notes, an ALJ may not rely exclusively upon a lay witness's family relationship to the claimant as a basis for discrediting his or her testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact

that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members.") (internal citation omitted). Although a claimant's family members will frequently have an interest in the outcome of the proceedings, an ALJ may not simply assume that their testimony is unworthy of credence. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). As the Ninth Circuit explained in *Valentine*, "[s]uch a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.") (quotation and citation omitted). *Valentine*, 574 F.3d at 694. Instead, to the extent the ALJ believes that a lay witness's relationship to the claimant is coloring his or her testimony, the ALJ must cite specific evidence from which *actual* bias could be inferred. *See Valentine*, 574 F.3d at 694 ("[E]vidence that a specific spouse exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice [as a basis for rejecting] that spouse's testimony.") (emphasis in original). The ALJ cited no such specific evidence in this case.

Nor may an ALJ discredit a witness whose testimony about the claimant's symptoms is grounded in lay observations rather than "medical facts or diagnostic testing." As noted above, the Ninth Circuit has repeatedly emphasized that "testimony from lay witnesses who see the claimant every day is of particular value." *Smolen*, 80 F.3d at 1289. Disregarding such evidence on the ground that the witness lacks medical or scientific training "violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (quotation and citations omitted). The ALJ erred in rejecting the Plaintiff's husband's testimony on this basis.

**C. Remand for Award of Benefits**

Having reviewed the record, the Court finds that remand for an award of benefits is appropriate. Plaintiff testified that her menstrual bleeding renders her "incapacitated" for four to five days per month. Tr. 71-72. This testimony was corroborated by Plaintiff's husband. Tr. 88. The vocational expert, Diane Kramer, testified that a person with Plaintiff's residual functional capacity who missed four days of work per month would likely be terminated. Tr. 97. Accordingly, the Court finds that Defendant has failed to satisfy its burden of proof at step five of the sequential evaluation process. No further testimony or evidence is required.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.
2. Defendant's Motion for Summary Judgment (ECF No. 18) is **DENIED**.
3. This case is **REVERSED** and **REMANDED** to the Commissioner for calculation of benefits consistent with this Order pursuant to the fourth sentence of 42 U.S.C. § 405(g).
4. The hearing set for February 2, 2014, is **VACATED**.
5. Plaintiff may file an application for attorney's fees and costs by separate motion, without the necessity of moving to reopen the file.

The District Court Executive is hereby directed to file this Order, enter Judgment for Plaintiff, provide copies to counsel, and **CLOSE** the file.

**DATED** July 25, 2013.

Thomas O. Rice
THOMAS O. RICE
United States District Judge